Good morning, Mr. Forrester, good to see you. Good morning, Your Honor, and may it please the court. If people outside government could wield the government's power, then the government's promised accountability to the people would be an illusion. That's what this court said in 2023 in Consumers Research v. FCC, and yet that is exactly what the Higher Education Act allows. It makes accreditation or approval by a private accreditor an absolute prerequisite to the award of federal financial assistance to students at institutions of higher education. You know, with federal health care programs like Medicare and Medicaid, if you want to be a provider, you have to be a licensed physician, you have to be, you know, a certified hospital, you have to meet requirements to be the kind of eligible provider for those kinds of federal funds, Medicaid's a state-run program. If you're right about this, are we going to have problems with a host of spending clause laws? I do think this is a fairly unique and extreme case. I do understand the point, and in many cases, I haven't drilled down and scanned the entire U.S. Code for all the... There's no lack of clarity on the part of the state that, hey, our educational institutions need to be accredited, the doctors have to be licensed physicians to be providers for Medicaid. If we're going to extrapolate that everything that makes them eligible to be those kinds of providers, we are opening up, it seems to me, a big can of worms. Well, in many cases, my understanding is a lot of those licensure requirements are actually, you know, administered by states, and we are not saying that a delegation to states raises the same concern. This is a purely private delegation. So, I mean, you've got a couple of theories here. On the private delegation theory, I think you're right, that this concern wouldn't be the same. I mean, you know, Florida obviously couldn't sue over the way Florida licenses doctors, but with your idea of making these people federal officers that have to be appointed by the President, confirmed by the Senate, you know, it does seem... It does seem to me that, you know, you have to be a member of a state bar to practice in our court. Does that make, like, the Florida bar examiners, are they federal officers because we rely on their certification to determine whether someone can practice in our court? No, that's not the position we're taking. I mean, you know, the Florida bar, of course, is supervised by the Florida Supreme Court. I mean, it's in many cases an arm of the state, but the point we're making is simply that the appointments clause makes it impermissible to delegate an authority this immense, which is, you know, basically determining access to federal funds in a range of a quarter trillion dollars a year. I mean, but the accrediting agencies, which long existing agencies aren't even purporting to determine your eligibility for federal dollars. They're just deciding whether they think you should be, you know, an accredited institution that you can hold yourself out as satisfying certain kinds of standards. Well, I... I mean, accrediting agencies are saying, oh, we're here to administer federal standards. I would disagree whether that's actually an accurate statement of what the accrediting agencies understand themselves to be doing. They are certainly aware that the consequence of their accreditation is to allow students to get an enormous, you know, in the aggregate, to get an enormous amount of federal financial assistance. And the suggestion is that, this shows up in the government's briefing, that because accreditors would be doing this anyway, it doesn't matter that the federal government has added to it this additional consequence. I really don't see how that can address the concern about the scope of the delegation here. I mean, but is it really what's going on is that, look, the federal government wants to make sure that when it has a program like this, that it's not being defrauded, right? That there's a minimum threshold to ensure that, I mean, look, if you get a Pell Grant, you can't spend it on Friday nights at the bar. You have to be spending it on a legitimate educational institution. And just as if you want to go to the doctor and you're a Medicaid beneficiary, you need to be going to a real doctor. That's really what's going on, isn't it? And it may be that there are then going to be a lot of conditions associated with that. So, you know, if you're the kind of institution that receives these kinds of federal dollars, then you know that, that means you might be waiving your 11th Amendment immunity if you're sued for federal civil rights violations or lots of other things that do, there's a whole That's really what's going on, isn't it? I'm sure that's the motive. The problem is the means by which they've gone about pursuing that motive. I mean, the Constitution is at times inconvenient. It requires an accountability mechanism for the exercise of sovereign authority. And this is, that's, that accountability mechanism is just simply absent here. I just don't, maybe I don't understand, Florida doesn't have to take the money, right? I mean, you can, there are institutions that have decided because we want to have more economy over our programs, because we don't want to be subjective to these accreditation requirements, we're not going to accept any federal funds. Organizations do that. Schools do that. So, I don't understand how we should be striking down an entire statute because, using your word, it's inconvenient. The requirements are inconvenient. That goes more to the spending clause point. But that would basically undo spending clause jurisprudence, as I understand it. Because the whole thrust of the spending clause is that you have to know the conditions you're entering into. And the fact that you may have accepted the funds with the condition of accreditation attached, when you have no idea what the accreditor may ultimately decide to do, I don't think answers the So, you're saying that's still insufficient notice. Right, right. Yeah, I mean, the government can't attach unconstitutional conditions to it. Right. To something, right? Right. Could I ask you to address some, like, very doctrinal points? So, the first one is whether the state can raise the private delegation doctrine problem at all. What do you say about that? Yeah, we are not, to be clear, we're not bringing a substantive due process claim. We're bringing a structural Article I, Article II based private non-delegation. So that's, you know, I do want to focus in on this, and hopefully you'll have lots of time to talk about this, because I think this is interesting. So you're, it seems to me. That's his message to me, give you extra time. So it seems like, you know, we only got two cases today, it seems like, it seems like It's lights to get. Your problem, though, with the delegation here is that it's to a private entity, right? And that doesn't seem like a Article I problem. That seems, that's not a vesting clause issue. If the, if the, if the problem can be fixed by assigning it to an executive officer instead of a private entity, then that's not a vesting clause problem, right? Well, the, the, in sector poultry, which Carter Cole cites for the private non-delegation doctrine, they actually said it is a, it is a, I forget the exact phrase, it was contravention of Congress's legislative duty to actually make the, the decisions about how to regulate the. Yeah, no, I mean, no doubt, like, you can, I know that, I think this, certainly this doctrine comes from both vesting and sort of due process problems. I guess my, my point is, it seems like your complaint is not a vesting clause issue because you seem to be suggesting that the problem you've identified could be fixed by Congress delegating the authority to the executive branch of government, right? And if it's, if it's a vesting clause problem, then Congress can't fix it by just changing who the authority is delegated to. Right, I just, I still think it would be an Article I problem though, in that Congress would be delegating the authority to actually set the standards to basically define the law to the creditors. The application of the standards to particular institutions of higher education, that does sound more an executive authority, so that seems like an Article II vesting clause problem to me, but I mean, the way I understand the, the various structural non-delegation cases is that they do consider the delegation to a private entity to be an abdication of Congress's duty to actually, you know, make the rules that govern. But it, I, it's, to a certain extent it's academic, I mean, if you prefer to house it under Article II, we're not going to make a big fuss of that, but it does seem like it's a problem one way or another. Do you agree then that if, if, if the argument really only makes sense in the context of the due process clause, which is something that Carter Cole mentions, then the answer to my question that we sent you earlier is, yeah, you can't benefit from that argument because the due process clause doesn't protect the state. Yeah, we're, we're not bringing a substantive due process claim, but I, I mean, I will point out one curiosity, one of the substantive due process cases that Carter Cole cites was a state in which the state of Washington was a plaintiff. It was at Washington XRL, Seattle Trust Company versus Roeburg. I mean, the text of the clause itself refers to person. I, I, I take it, we're not bringing, we're not bringing a substantive due process claim. Our claim is structural, based on Articles I and II. And, and so this, I guess this is the, well, and I, we don't need to belabor this, but I mean, a lot of these private non-delegation cases are actually about states doing stuff, you know, and so it's got to be that there's an aspect of this doctrine that comes from not Article I or Article II, but from due process, right? Otherwise, states wouldn't have to do anything at all under this doctrine. I, I think they're complementary principles, but I, I, I do think it separately contravenes Articles I and II for Congress to delegate rulemaking authority and to actually direct a third party to be making determinations as to the application of those rules to private parties. So there is some aspect of this that you would say can't be fixed by just making these accreditors executive officers? Is that what you're saying? Well, we do propose a way it could be fixed. The problem is that's not in the statute. So it's a, it's a sort of a inverted way of saying that the delegation is invalid. It could be fixed by making them principal officers. But then, but then it's not a, that's, that's what I'm having, then how is it a delegation clause problem? Because if, if the problem is that Congress can't delegate its authority, then Congress can't delegate its authority to executive officer, a state officer, a military officer, anybody, right? So I think the fact that it's delegated to private people is not, is irrelevant to that. That's why it has to be sound and due process, your argument. I'm, I confess I'm having a little trouble following the thread of this because, well, let me ask you this. Like, what is the non-delegation? I mean, and I mean, the non-delegation principle, the idea that Congress can't delegate its authority, right? That isn't, that usually those cases are litigated where the argument is Congress has delegated its authority to the executive branch and it can't do that. It's legislative authority we're talking about delegating it and the, the, the doctrine, the premise is the executive can't legislate. That's the public non-delegation doctrine, that's the other prong of it, which is the, you have to attach intelligible principles, but there's a separate private non-delegation doctrine principle. If you simply can't give the authority to a private party, that that's an abdication of Article I. So, when you say that's like a separate abdication of Article I power than, than giving a executive branch officer and legislative power without intelligible principles? Without intelligible principles. It's, it's, it's, yeah, it's a separate kind of a violation. It's still the same principle, Article I. So, you're, so you're saying just, so, so, so Congress cannot delegate to a private entity even if it gives them intelligible principles. That's an Article I problem. What this, what the court has said in Sunshine Anthracite most recently, last year in Consumers Resource, it said can, if the, an executive agency is exercising authority on pervasive surveillance over the activities of the private party. That's the, that's the thrust of our non-delegation claim. Basically, the creditor's decisions about what standards they make and how they apply them to particular institutions of higher education need to be immediately reviewable. Well, so my, so my initial question was, I thought in the vein of due process, because you have an, arguably an ability to appeal whatever accreditation decision you get to the Department of Education, you get, it sounds like the structure, you get to even decide which agency you want to go through. So what, I guess, I'm trying to understand what the injury is. So that's one issue, recognizing your time is, is gone. The second issue, and I'm not here to raise a standing problem, but it seems like the money is for the students and the school benefits. The student gets to decide, you know, where they want to use these funds, and these funds go to an accredited school. So I guess I'm also understanding, one, if the school decides that it doesn't want to go through the accreditation process, means it doesn't get federal funds. It can decide that. But the student needs money. And so the government is providing the service of identifying who can get the money. So one, what is the injury to you, given that the money is for the students? And then the second, what is the real injury, given that you do have a review or appeal process embedded in the system? The appeal process, first of all, for accreditation decisions, does not go to the Department of  It's just within the accreditors. There's a mechanism that they're required to set internally, but it doesn't go to the Department of Education. Right. I understand. I was speaking more to the letters of clarification and the expansion in terms of, I mean, the Department of Education has provided some guidance regarding that as well. Yeah. And we're not, the guidance issue is off the table now. I understand. As far as- And you're not, and you're not proceeding, you've said repeatedly this morning, under a due process theory. We're not. Okay. You're disclaiming that. Yeah. So as far as the question about the dollars going to the students, the pre-court has said, this is another spending clause question, the Supreme Court has said that in determining who are the intended beneficiaries and therefore are subject to the conditions that attach to the expenditure of funds, you actually have to look to the scope of the statute itself. And for instance, in the Grove City College case, Grove City was trying to argue that they weren't subject to Title IX non-discrimination provisions because the money was going to the students and then to them. The court said, no, no, no, you are also an intended beneficiary because the money does ultimately go to you. That's clearly within the contemplation and purpose of Congress. I think that is the same is true for these various programs here. I mean, there's no question that, I mean, the purpose, they actually cite a purpose statement from the Higher Education Act that says part of its purpose is to actually assist the institutions in carrying out their missions. And it's all wrapped up together. I have one more question for you on the appointments issue. So I've read these cases from the Fourth Circuit and the Fifth Circuit, Kirpin, I guess, and National Horsemen's Benevolent Association that say that, this is the way I read them, that if you're talking about a private entity, for that private entity to be established by law, the private entity couldn't have pre-existed the establishment by law. You know, it has to, basically, it had to have been created by the law. Is there, what do you say about those cases, that principle? I mean, it seems here, here it seems pretty clear that the accreditors existed before this law was passed and they aren't, they aren't, well, what do you say about that? Yeah, you're correct in characterizing what the Fourth and Fifth Circuit said. They do this as part and parcel of an analysis that assumes the appointments clause only applies to federal entities. Our position is, and at times the United States government's position has been that that's not true. That even a private entity that receives a delegation of sovereign authority is required to be appointed in accordance with the appointments clause. But I would be willing to accept the framework of the Fourth and Fifth Circuits if it were accompanied by a rigorous non-delegation doctrine that picked up where the appointments clause left off and said that the delegation to the private party contravenes separately the structural principles of Articles 1 and 2. We think that the two doctrines actually overlap, but the view of the Fourth and Fifth Circuit is that one stops, the other begins. Okay, Mr. Forster, we've let you go over a lot, so let's hear from the Department. Good morning, Your Honors. May it please the Court, Stephen Hazel for the Federal Government. For over a century, voluntary associations of educational institutions have engaged in peer-led accreditation. In deciding how to allocate the limited pool of federal education funds, Congress has chosen to rely in part on information from accreditors that the Department identifies as reliable. Similar uses of information generated by private entities are commonplace, and their constitutionality has never been questioned. Chief Judge Pryor, you started by asking my other friend, you know, doesn't this happen in a host of cases? The answer is yes. From the bar exam to medical. Those are those state institutions, aren't they? They are, Your Honor. I mean, I have some questions about why this, if delegations from Article 1 or Article 2 aren't permissible, why that would be permissible for states, but not private entities. Even putting that point aside, if you just want to. What about the spending loss aspect of it? Your Honor, I mean, I was focusing on private non-delegation, but, you know, as to the spending clause, I mean, I think this ascertainability argument just falls apart under this court's precedent. There's, it's clear under the— It seems to me, I mean, the state couldn't very well complain about clarity of notice when it controls the institutions that set the standards for its own entitlement, right? So, the Medicaid provider has to be a licensed doctor. Well, the state is the one who actually decides that. So that seems to be a problem with the argument that you don't have some notice of what is required. But for the accreditation institutions, you have no idea what they're going to do. So Your Honor, I disagree with that. I mean, just to focus in on the spending clause, you know, the statute makes it clear you have to be accredited. There's no dispute about that. It's clear under spending clause precedent that not everything has to be spelled out. And just to give an example, with the Medicare statute, one of the conditions that states have to rely on is you have to comply with HHS regulations. Those regulations can change. There's nothing different going on here. We think that's the end of their spending clause argument. To return... Well, but they do, and I think it was a fair point earlier that even though the money arguably is going to the students, the schools are intended beneficiaries. And so to the extent that their rights are being implicated in some way, it doesn't seem to... Their argument totally foreclosed. So Your Honor, we're not raising this separate argument, which the district court also focused on, that that was about the difference between the money going to the states directly or indirectly. We just haven't raised that threshold argument in this court. Our point here is simply that sort of on the merits, this is ascertainable, just as, for example, the Medicare example that I just gave. To return to... Is there any way to understand their private non-delegation argument without it sounding in due process? So, Your Honor, the government has understood private non-delegation as rooted in separation of powers principles. That's what we said to the Supreme Court in the Solicitor General's briefing in the consumers research case. So we don't... Senator Cole did talk about a delegation being a denial of rights safeguarded by the due process clause of the Fifth Amendment. That's true, Your Honor. There are cases where there are private non-delegation and due process concerns. So the Amtrak litigation in the Supreme Court and the D.C. Circuit, for example, those were litigated as separate claims. As Florida made very clear at the podium, they just haven't brought a due process claim here. Certainly, we agree that if this court construed Florida as having brought such a claim, it would fail because Florida is not a person. It runs into the problem that Judge Brasher was asking about, which is this isn't really a vesting issue because an executive officer could do, a principal officer could do what you're saying the accreditation agencies cannot. So, Your Honor, of course, we don't think there's any delegation at all here. I would refer the court to Judge Sutton's opinions in the Sixth Circuit horse racing cases where he understands private non-delegation even, I think, in sort of roughly the contours of this case as involving the Article I and Article II vesting clauses and not due process. Again, obviously, if this is due process, that's really the end of the case for Florida. If – Can you just – and just follow up on that because I really am having a difficult time understanding that because it seems like what they're saying is, and this maybe is literally exactly the same thing Judge Brasher said, but it seems like what they're saying is that this can be fixed by making these people not private but making them government actors. And I just didn't understand non-delegation doctrine as something that can be fixed as long as the delegation is to some other part of the government. So, Your Honor, part of the complexity here is, I think, when it comes to making federal spending decisions, Congress obviously has the power of the purse, but federal agencies often have substantial leeway in making those decisions. I mean, that's Lincoln v. Vigil, for example, the Supreme Court case. And so that makes sort of analyzing would this be legislative power or executive power trickier. I think the way that Florida's argument would work if there really was a delegation would be this is legislative power and it's being sent not just outside the legislative branch but outside the government. We obviously don't think that's true. And if I could just address the text of the statute just for a minute. Congress made clear that you've got to be an eligible institution. Congress set the conditions. Congress told the Department of Education you need to check to see whether those conditions are met, including making sure that an accreditor is reliable. That puts this case on all fours with Kerr v. Wallace, which is a Supreme Court case that distinguishes Carter-Cole. That was a case about regulation for tobacco growers. Congress set a number of conditions for that regulation to apply, including a condition that looked to what private parties did. And what the Supreme Court said was it's Congress that exercised its legislative authority and set those conditions. And so we just don't have a delegation problem. And it's not just the precedent of the Supreme Court. It's also this court's precedent, including the state action case that we pointed to, where this court, looking at this exact statutory scheme, said that there was never a delegation of federal power here. Florida hasn't addressed those precedents. I'll also note my friend on the other side at one point said, you know, if you rule for us, that might be inconvenient for the federal government. That's quite an understatement. This is a federal statute that goes all the way back to the Korean War GI Bill, more than half a century. There are many other federal statutes, not just this one. So in talking about that history, and for me this is just a basic question of understanding the reasoning behind the delegation to a private, if we want to use that word, to private entities as opposed to another branch of the government. I think I'm confused, as was stated earlier. If you're arguing, you know, delegation is wrong, but you're okay with giving the authority to another branch, then I'm not really sure what the argument is. But let's say that that is the problem, that it's being delegated to a private entity. What is the advantage of having a private entity as opposed to another arm engaging in this kind of review of universities? The advantage for constitutional reasons, Your Honor? I mean, we're not suggesting that that, you know, that that would be some, that would be relevant to the constitutional analysis. Well, I, and again, maybe I'm not fully understanding it, but I understood the argument to be that if another, if the government internally was doing this accreditation, that that would be more satisfactory. The problem is that you've got these private entities doing the work for the government, and I'm trying to understand, if that really is just the quick fix, then what's the problem with that? So, Your Honor, the problem is that Congress didn't want to be in the business of federalizing educational quality. I mean, Congress has said throughout the history of this statute that, you know, we want to make sure federal money, taxpayer dollars, are going to quality institutions, that it's not being wasted. We've got to have a way to do that. We don't want the Department of Education or another part of the federal government to be setting educational quality standards. There are, you know, obvious concerns about doing that, and we have this – Historically, education is a state responsibility. The federal government has long now, probably even before the GI Bill, been in the business of at least supporting those efforts of promoting it, but they don't want to federalize education. That's right, Your Honor, and that's one of the extraordinary features of this case, that it's Florida here asking for this result. I think, you know, a ruling in Florida's favor might well force Congress to choose between not having quality standards and having to federalize that. As you pointed out, Your Honor, that's – I mean, that's not how this has been done. These institutions have been doing that privately for more than a century. And I'll note that it's not just the federal government that looks to these private accreditors. Many states, including Florida, do as well. My understanding is that many states have variants of a private non-delegation doctrine, and so, you know, the extraordinary consequences of Florida's argument wouldn't even necessarily be limited to this federal statute, the many other federal statutes that do this, but could have consequences for the states as well. And is that the main concern, if we were to agree with the state, is that it would require the federalization of education? Your Honor, it wouldn't require the federalization. I guess it would put Congress to the choice of either, you know, federalizing quality or, you know, not having quality standards for this money at all. Or withdrawing from the support of higher education. Yes. Obviously, neither of those seem like particularly good options for Congress. And, of course, the holding wouldn't necessarily be limited to education. Similar problems could arise with federal health care funding in many other areas as well. Can I ask you to address the doctrinal point that – so, it seems like as a matter of Appointments Clause doctrine, for a position to be established by law, the entity that's given the power could have existed before the law. Does that – so, you've got the Fourth Circuit and the Fifth Circuit that both say, look, if a private entity sort of pre-existed the statute, then necessarily this is not a position that was established by law. Am I reading those cases right? I think so, Your Honor. And I would refer the court just to the text of the Appointments Clause, which has established by law in there. I mean, you know, as an initial matter, their Appointments Clause argument disappears if you agree that there's no delegation. But if the court goes beyond that step – Well, that's interesting. So, your position is – which I guess I didn't really think about that. But, I mean, your position is that the authority for delegation purposes is the same as authority for the Appointments Clause purposes. Those are exactly the same? Your Honor, I guess the way that I'd put it is that Florida today, and in their briefs, has conceded that if there's no government power being exercised by these accreditors, that there's just no Appointments Clause problem here, and the court could stop there. Yeah, but is that the same question for delegation? No government, no power at all? I just don't know that those are coterminous questions, I guess. I'm not sure either, Your Honor. I mean, in the Appointments Clause context, courts sometimes refer to, like, an exclusive and traditional government power. You know, I don't know exactly how much daylight there could be between that and a delegation of federal power. It's certainly not something the court needs to decide today. I'm happy to answer – Well, let's just assume that we don't decide it that way. Let's assume we have to address the Appointments Clause sort of on its own terms. Let's assume this Fourth and Fifth Circuit case didn't exist. Couldn't a position be established by law, even if it sort of preexisted in the world, if a statute came in and said, we are now federalizing this, and we are making something that already existed? So accreditation already exists, right? They're already out there doing it. And Congress comes in and says, they now work for us, right? We're establishing this position called accreditor, and they determine who gets our money that goes to education. Your Honor, we haven't ruled out that possibility in this case. We're not ruling it out now. It would obviously be a pretty extraordinary situation. I'm not aware of any case like that. Our point here simply is, that's not what the statute does. You know, these private positions at accreditors have been around forever. Congress looked at what they were doing and thought, look, that's useful information for us to decide how to use these limited federal funds. You know, whatever it means to establish an office by law, it's not what the statute is doing. I realize you're trying to win the case and not like create good precedent. But I mean, I guess that's a different position than what the Fourth and the Fifth Circuit took. I think the Fourth and Fifth Circuit seemed to adopt this very hardline rule that if you preexist the statute, then you're never established by law. You know, do you care to defend that position? Your Honor, we haven't taken a position in this case on whether, you know, whether the court needs to go that far. It's just this, you know, whatever established by law means. It's not this, again, assuming that the court thinks there really has been a delegation. The court has no further questions. We ask that you affirm. Well, thank you, Mr. Hazel. I would have given you more time if you needed it. Since your friend on the other side certainly had a lot, we had a lot of questions for her. But thank you. Mr. Forrester, you saved three minutes. And given how much time I already gave you earlier, you might not get more than that. That was to me. Yeah, I feel like we could talk about this for hours. Yeah, we probably could. The point that Judge Brasher is making about Article I versus Article II, the difference between the delegation to the private party, the delegation to, you know, another agency, is that the agency is in the executive branch, which is accompanied by the political accountability mechanisms that attach to the executive branch. Now that, as I thought about this more sitting down, I think maybe what you're driving at, that it still makes the non-delegation doctrine sound in Article II rather than Article I terms. That's fine. I'm not here to quibble about the exact conceptual source, except to point out that Schecter Poultry did put this, phrase this as an Article I concern. On the Carter-Cole point, yes, it says due process, but it cites Schecter Poultry. Schecter Poultry is not a due process case. And it cites the very part of Schecter Poultry that set out the private non-delegation doctrine distinct from the, what some people call public, traditional, the intelligible principles doctrine. So you, so is it fair to conclude that a ruling in your favor could support federalizing education, taking it out of the state's hands by more clearly enshrining that oversight responsibility within the federal government? Yeah, I'm glad you asked that, because that was going to be my final point. That's actually not what we're asking for. The states already have a role. They have to license these institutions to operate within the state. The system as it currently exists has been described as a triad system, where you have the federal government, the state governments, and the creditors all having some role or another. We're just trying to knock the creditors out, but the states continue to have, very much have a role in assuring educational quality. So we're, this is in no wise, no wise meant to aggrandize the federal government at the state, at the expense of the states. That same authority applies to whether the colleges are private or public? Yes. It's a big deal. It'd be an extension of the police power of the state. They claim that the Huasi College case supports them. It does not. Huasi, they actually say in the brief that Huasi characterized the Higher Education Act, the following, that Congress did not delegate the authority to determine the allocation of funds to private entities. That's not what Huasi said. It actually said the Department of Education didn't. Congress certainly did. That's what it did in enabling accreditors to basically stand as an impediment to anyone getting money. They have an absolute veto over the availability of funds to students.  unless you have any further questions, I urge the court to reverse and remind them we're here on a motion to dismiss. Thank you very much, Mr. Forrester. We're adjourned for the week.